INTERNATIONAL BEAUTY EX-CHANGE, INC., a Florida corporation; and I.C.E. Marketing Corp., a New York corporation, Plaintiffs,

v.

TONY DOLLAR KINGDOM, INC.; et al. Defendants.

No. 01–0524–CIV.

United States District Court, S.D. Florida, Miami Division.

March 6, 2001.

Robert Thomas Farrar, Holland & Knight, Miami, FL, Michael J. Ioannou, Mattlin & McClosky, Boca Raton, FL, for plaintiffs.

## ORDER DISMISSING CASE

SEITZ, District Judge.

THIS CAUSE comes before the Court on Defendants, Mitchell Cosmetics S.AR.L and Michel Farah, and Non–Party Gapardis Health and Beauty Inc.'s Emergency Motion to Vacate Seizure Order, to Dismiss or Transfer Action, and to Limit Scope of Seizure Order and for Sanctions, filed February 27, 2001. Plaintiffs responded to the Emergency Motion on March 1, 2001 and the Defendants and Non–Party replied to Plaintiffs' response on March 2, 2001. For the reasons stated below, this Court shall order the case dismissed and vacate the seizure order.

### BACKGROUND

On February 9, 2001, Plaintiffs filed a Complaint claiming that various Defendants infringed two of their trademarks.[1] The Complaint sought an emergency ex parte seizure order, temporary restraining order, preliminary and injunctive relief, compensatory damages, and attorneys' fees and costs. In support of the Complaint, Plaintiffs submitted a certificate of trademark registration for "MOVATE", a summary order from the United States Court of Appeals for the Second Circuit for the "TOPICLEAR" mark, various examples of allegedly counterfeit packages, and affidavits from various individuals asserting that the Defendants produced and/or sold the counterfeit goods.[2]

Initially, on February 12, 2001, this Court denied Plaintiffs' Emergency ex parte emergency motions stating that the grant of an ex parte temporary restraining order is "such an unusual and powerful remedy" that the "applicants must clearly and consistently present their case" and that the Plaintiffs

---

1. Specifically, Plaintiff claimed that the Defendants were manufacturing, producing, importing, selling, and distributing counterfeit cosmetic products under their "MOVATE" and "TOPICLEAR" trademarks.

2. Many of the affidavits were submitted by officers of the Plaintiffs.

failed to do so.[3] In an attempt to allay the Court's concerns, Plaintiffs filed an Amended ex parte emergency motion on February 13, 2001 and submitted supplemental affidavits on February 13, 2001 and February 16, 2001. On February 13, 2001, the Court held an ex parte hearing on Plaintiffs' emergency motions. Following the hearing, on February 16, 2001, the Court granted Plaintiffs a temporary restraining order, an order for expedited discovery, and an order for the seizure of infringing goods and business records.

The seizure occurred on February 27, 2001 and the above-named Defendants filed an emergency motion to dismiss/transfer and vacate the seizure that evening. The Defendants' motion explained to the Court, for the first time, that three related cases between many of the same parties and regarding the same trademarks were currently pending before other judges in the Southern District of Florida.[4] Although Plaintiffs' counsel was lead counsel in all three of the pending related actions, he never advised the Court of this fact.

## ANALYSIS

Between the initial filing of the Complaint on February 9, 2001 and the Court's order granting Plaintiffs' motion for a temporary restraining order and order of seizure on February 16, 2001, Plaintiffs' counsel was presented with numerous opportunities to inform this Court of the pendency of the other similar actions.[5] Plaintiffs' counsel chose not to do so. This Court will not speculate as to Plaintiffs' counsel's motivations for keeping this highly relevant information from the Court, but may request that others look further into the matter.[6]

S.D. FLA. L.R. 3.9C dictates that:

"Whenever an action or proceeding is filed in the Court which involves subject matter **which is a material part of the subject matter of another action** or proceeding then pending before this Court, or for other reasons the disposition thereof would **appear to entail the unnecessary duplication of judicial labor** if heard by a different Judge, the Judges involved shall determine whether the newly filed action or proceeding shall be transferred to the Judge to whom the earlier filed action or proceeding is assigned."

To assist Judges in avoiding the duplication of judicial resources, S.D.FLA.L.R. 3.9D requires

"**attorneys of record** in every action or proceeding to bring **promptly** to the attention of the Court and opposing counsel the existence of other actions or proceedings as described in paragraphs A, B, and C hereof... by filing with the Court and serving on counsel a "Notice of Pendency of Other Actions," containing a list and description therefore sufficient for identification."

Plaintiff's counsel, in his oral presentations at the Court's hearing on February 28, 2001 and his response to Defendants' emergency motion presented several reasons why he believed the subject matter of the cases in

---

3. The Court listed four concerns with Plaintiffs' motion: (1) the lack of a security bond; (2) Plaintiffs failure to allege the culpability of some named Defendants; (3) the self-serving and conclusory nature of the Plaintiffs' affidavits; and (4) the unclear nexus between the locations listed in Plaintiffs' proposed order and the alleged counterfeit goods.

4. The cases are 00–CV–2280–HUCK, 00–CV–4921–MOORE, and 00–CV–7830–DIMITROULEAS. The case before Judge Dimitrouleas revolves around the "TOPICLEAR" trademark, includes the same Plaintiffs, and names Michel Farah (according to Plaintiffs' counsel the leader of the operation) as a named Defendant. Judge Moore's case also contains similar plaintiffs and defendants and concerns the "MOVATE" trademark. While the case before Judge Huck con-

cerns the "FAIR & WHITE" trademark, the issues and the parties are quite similar.

5. Plaintiffs' counsel could have informed the Court of the pendency of similar actions through the: (1) original Complaint; (2) Amended Complaint; or (3) hearing on the Complaint or by filing a notice of pendency of other actions at any time between February 9, 2001 and February 16, 2001.

6. Plaintiffs' counsel's behavior appears to be a prima-facie violation of his duty of candor to the tribunal. *See* RULES REGULATING THE FLORIDA BAR, Rule 4–3.3(d) (stating that "[i]n an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

question differed. Without delving into the substantive matters pending before other judges, this Court finds that Plaintiffs' counsel's assertions of differences between the subject matters strains credulity. A simple review of the complaints filed in the four cases confirms as much.[7]

While dismissal of an action is a somewhat severe sanction,[8] the Court finds Plaintiff's Counsel's violation of S.D. FLA. L.R. 3.9D to be particularly egregious due to the extraordinary remedies he requested and ultimately received, as well as his numerous opportunities to apprise the Court of the related actions. FED. R. CIV. P. 65(b) requires that a Plaintiff show that "immediate and irreparable injury, loss, or damage will result to the applicant *before* the adverse party or that party's attorney can be heard in opposition." (emphasis added). Since the parties have been litigating many of the same issues before other judges on this Court for over eight months without any apparent difficulty, much less evidence of bad faith, it is clear that had the Plaintiffs made this disclosure they would not have met this standard. In addition, any preliminary injunction requires the moving party to show a likelihood of success on the merits. *See Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561–62 (11th Cir. 1989), *aff'd sub nom., McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). The pendency of related actions regarding the legitimacy and ownership of the trademarks in issue raises questions about Plaintiffs' likelihood of

success. Finally, the express Congressional purpose for the availability of these extraordinary remedies in trademark cases is to prevent disreputable defendants from being able to either flee with, or destroy, the goods in question or pertinent business records and thereby avoid prosecution. *See* 130 Cong. Rec. H12080 (daily ed. October 10, 1984). The fact that the major defendants in these cases have litigated for many months with no allegations of their attempts either to flee with, or destroy, any goods or records counsels against the granting of a temporary restraining order and order of seizure. Accordingly, it is hereby

ORDERED THAT:

(1) the order sealing this case is VACATED;

(2) this Court's February 16, 2001 Seizure Order is VACATED;

(3) all pending motions are DENIED AS MOOT;

(4) the preliminary injunction hearing scheduled for **March 7, 2001 at 1:00 p.m.** is CANCELLED; and

(5) the case is DISMISSED and this CASE IS CLOSED.

---

7. The complaints in the four cases are nearly identical with certain paragraphs repeated verbatim.

8. Although in this instance it is not severe because Plaintiffs can seek to supplement their claims in their currently pending cases. *See* FED. R. CIV.P. 15.